# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
## DIVISION ONE

IN RE MARRIAGE OF,
MICHAEL D. PEASE,

Appellant,

and

ELEANOR M. RANDECKER-PEASE

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 71327-2-I

ORDER GRANTING MOTION,
FOR CLARIFICATION,
WITHDRAWING AND REPLACING
OPINION AND DENYING EXTENSION
OF TIME TO FILE COST BILL

A motion for reconsideration was filed by respondent, Eleanor M. Randecker-Pease asking the court for clarification of the unpublished opinion filed in this case on March 2, 2015 and a motion for extension of time to file respondent's cost bill and affidavit. The panel has considered the motion for clarification and determined it should be granted.

Now, therefore, it is hereby

ORDERED that the motion for clarification is granted and the opinion of this court filed March 2, 2015 is withdrawn and replaced with a revised opinion.

IT IS FURTHER ORDERED that respondent's motion for extension to file a cost bill and affidavit is denied.

SO ORDERED.

Dated this 23rd day of March, 2015.

Spearman, C.J.

WE CONCUR

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

IN RE MARRIAGE OF
MICHAEL D. PEASE,

          Appellant,

v.

ELEANOR M. RANDECKER-PEASE,

          Respondent.

)
)
)
)
)
)
)
)
)
)
)

No. 71327-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 23, 2015

SPEARMAN, C.J. — Michael Pease was found in contempt of court for failing to comply with a court order requiring him to make monthly maintenance payments to Eleanor Randecker-Pease. He appeals the trial court's finding that his failure to pay was intentional. He also argues that the trial court failed to make the requisite finding that he had the present ability to pay. Finding no error, we affirm.

## FACTS

Michael Pease and Eleanor Randecker-Pease filed for legal separation and negotiated a distribution of marital assets. Under the November 8, 2007 decree, Pease was ordered to pay maintenance of $5,507 per month. While this entire amount was characterized as "maintenance," it included a $3,200 mortgage payment, an additional $1,000 payment to be applied to principal, and payment of $1,247 to Randecker-Pease for expenses. The payment amount varied slightly based on increases in required loan payments, the sale of the

house, and an agreed upon yearly increase in expenses based on the Consumer Price Index for the Seattle Metropolitan Area. Beginning in September 2010, Pease was also responsible for paying the monthly premium for Randecker-Pease's health insurance. As of May 2013, the total maintenance obligation was $5,724.33.

Pease filed for modification of maintenance payments and conversion of the legal separation into a divorce in January 2013. Randecker-Pease responded to Pease's motion and later moved for an order holding Pease in contempt for failing to pay maintenance and health insurance. At a hearing on April 12, 2013, the King County Commissioner declined to hold Pease in contempt, finding that he "did not have the ability to pay," but also that he admitted that he owed "large sums of money" to Randecker-Pease. Clerk's Papers (CP) at 117. The case proceeded to trial by affidavit on the request for modification of maintenance payments and to determine the judgment amount.

On April 19, 2013, the parties appeared before a different King County Commissioner for hearing on the petition to modify.

Pease submitted declarations with testimony about facing multiple health difficulties and being laid off from his job in 2008. He testified about looking for work in IT management, receiving unemployment compensation until June 2010, and taking out additional loans to pay bills and college expenses for his daughter. He attempted to start a tax business and market an e-book series, but was unable to find work in various fields. He went on inactive status with the Washington State Bar Association during that time because he could not meet

his licensing obligations. He began receiving Social Security Disability payments in November 2012. In January 2013, Pease submitted a financial declaration showing a monthly income of $2,439, monthly expenses of $1.232, and recently paid debts of $4,220.56.

Randecker-Pease submitted declarations and exhibits showing that Pease had consistently refused to pay and indicated that she would "need to sue [him] for divorce in order to be paid anything [he] owe[d] [her]," and that he would "look to reduce [his] obligations to [her] by what ever(sic) means necessary." CP at 310; CP at 341-2. She submitted evidence of Pease's endeavors to earn money through a "hush, hush website" and a money-doubling scheme, and his request to her for a loan of $8000. CP at 56.

The Commissioner denied the petition, finding "numerous inconsistencies in the petitioner's bank statements relating to deposits and withdrawals," and that Pease "chooses to pay things other than his court ordered obligation, and does not make even partial payments toward his court ordered obligation." CP at 356-360. The commissioner also found that Pease had "submitted no evidence that he is limited in all types of work, and no evidence whatsoever that he [is] unable to pursue limited employment." CP at 357. Additionally, the court found that Pease, from his own declaration, had a monthly income surplus of $1,207, which meant that "he had money with which to pay the respondent's health insurance premiums and chose not to." CP at 358.

Both parties filed motions for revision seeking judicial review of the denials of the motions for contempt and to modify the order of maintenance. On

No. 71327-2-I/4

November 22, 2013, the trial court granted Randecker-Pease's motion for revision and found Pease in contempt. Pease appeals.[1]

## DISCUSSION

Pease argues that the standard of review is de novo, because the decision was based on written material only. Brief of Appellant at 10. He cites a number of cases that support this rule, including In re Estate of Bowers, 132 Wn. App. 334, 339, 132 P.2d 916 (2006); Progressive Animal Welfare Soc. v. University of Washington, 125 Wn.2d 243, 252, 884 P.2d 592 (1994); Amren v. City of Kalama, 131 Wn.2d 25, 32, 929 P.2d 389 (1997); Housing Authority of City of Pasco and Franklin County v. Pleasant, 126 Wn. App. 382, 387, 109 P.3d 422 (2005). Randecker-Pease disagrees, citing In re Marriage of Rideout, 150 Wn.2d 337, 350, 77 P.2d 1174 (2003) as support for appellate review based on the substantial evidence standard. Br. of Respondent at 9.

In Rideout, the state Supreme Court observed that the general rule relating to de novo review applies only when the trial court has not seen or heard testimony requiring it to assess the credibility of the witnesses. 150 Wn.2d at 351. The court held, however, that the substantial evidence standard is appropriate "where competing documentary evidence had to be weighed and conflicts resolved." Id. The Rideout court rejected the argument that an appellate court is in "as good a position to judge credibility of witnesses when the record is entirely documentary," reasoning that "trial courts are better equipped than

---

[1] The trial court denied Pease's motion for revision regarding the denial of his petition to modify the order of maintenance. Pease has not appealed this denial nor has he appealed the judicial findings that the Commissioner's findings of fact and conclusions of law "are well supported by the facts and the law." CP at 411.

4

multijudge appellate courts to resolve conflicts and draw inferences from the evidence." <u>Rideout</u> at 352. Under <u>Rideout</u>, substantial evidence is the appropriate standard of review for the trial court's factual findings.

A trial court must make findings of fact that set forth the basis for its judgment of contempt. <u>In re Marriage of James</u>, 79 Wn. App. 436, 440, 903 P.2d 470 (1995). In determining whether facts support a finding of contempt, the court must strictly construe the order alleged to have been violated, and the facts must constitute a plain violation of the order. <u>In re Marriage of Humphreys</u>, 79 Wn. App. 596, 903 P.2d 1012 (1995). Whether contempt is warranted is a matter within the trial court's discretion; unless that discretion is abused, it should not be disturbed on appeal. <u>King v. State of Wash., Dep't of Social & Health Services</u>, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988).

Pease argues that in order to find him in contempt, the trial court was required to determine whether or not he had the present ability to pay the monthly maintenance payments. Randecker-Pease argues that the trial court only had to find intentional disobedience in order to find and hold Pease in contempt.

RCW 7.21.010(1)(b) defines "'contempt of court'" as "intentional ... [d]isobedience of any lawful judgment, decree, order, or process of the court." The primary purpose of civil contempt power is to coerce a party to comply with an order or judgment. <u>State v. Breazeale</u>, 144 Wn.2d 829, 31 P.3d 1155 (2001). A trial court may impose a contempt sanction under its inherent constitutional authority or under statutory provisions governing contempt of court. <u>State v.</u>

Jordan, 146 Wn. App. 395, 190 P.3d 516 (2008). Contempt requires a finding of "[i]ntentional disobedience." King, 110 Wn.2d at 797 (citing Matthewson v. Primeau, 64 Wn.2d 929, 934, 395 P.2d 183 (1964)). Inability to comply is an affirmative defense and Pease has both the burdens of production and persuasion. Id. at 804. He must offer evidence as to his inability to comply and the evidence must be of a kind the court finds credible. Id.

Pease argues that Britannia Holdings, Ltd. v. Greer, 127 Wn. App. 926, 113 P.3d 1041 (2005), precludes a finding of contempt when a trial court fails to find that the contemnor has the present ability to comply with the order. Randecker-Pease argues that Britannia has no application to this case, because it was a civil collection case, not a family law matter, and involved incarceration as a sanction. Furthermore, she argues that even if Britannia did apply, the trial court found that Pease had the "present ability but is unwilling to comply with the court's order." CP at 144.

We agree with Randecker-Pease and find that Britannia does not apply. In Britannia, the appellants challenged the purge clause requiring them to pay the amount owed, not the underlying finding of contempt. 127 Wn. App. at 930. The appellants had been found in contempt of court for knowingly disobeying court orders. Id. The Brittania court found that the purge clause calling for incarceration was impermissibly penal rather than coercive, without a finding that the appellants had the present ability to pay. 127 Wn. App. at 934. Here, Pease is not challenging the purge clause and is under no threat of incarceration. The trial

6

court was therefore under no obligation to find that Pease had the present ability to pay before entering a judgment of contempt.

Pease assigns error to a number of the trial court's factual findings. We address only the alleged errors that are of consequence to the trial court's decision.[2] First, Pease argues that the trial court erred when it found that he had intentionally failed to make his maintenance payments. We disagree. The trial court found that there was "clear, convincing, and cogent evidence of [Pease's] intentional failure to make his maintenance payments." CP at 144. Our review of the record reveals multiple examples in which Pease declined to leverage his credentials and pursue limited employment, invested in questionable business ventures, paid debts other than maintenance, and verbally challenged Randecker-Pease to enforce the order against him. We conclude that substantial evidence supports the trial court's finding that Pease intentionally failed to make payments to Randecker-Pease.

Second, Pease argues that there are no facts in the record that show that he has the present ability to comply with the court ordered maintenance provisions or to purge contempt. Again, this is not a requirement for a finding of contempt, and Pease had the burden to show that he was unable to comply. The record shows that the trial court considered all of the evidence and expressly

---

[2] Pease disputes a number of particular findings that are appurtenant to the trial court's ultimate finding that he intentionally failed to make his maintenance payments. He argues that the trial court erred when it found that he "used his severance package inappropriately." Br. of Appellant at 1. He also contends that the trial court erred by finding that he "'held out' for a higher paying job before lowering expectations and pursuing a wider range" of jobs. Id. He further claims it was error for the court to find that he did not "show a good faith effort to work and conserve assets." Id. Finally, Pease argues that the trial court abused its discretion by concluding that he had the present ability to pay maintenance but was "unwilling to do so," and that nonpayment of health insurance premiums was "evidence of contempt." Id.

7

found that he did have the present ability. We defer to the fact finder on witness credibility and the persuasiveness of the evidence. In re Marriage of Akon, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). We decline to disturb the trial court's findings with regard to Pease's present ability to pay his court ordered obligations.

Finally, Pease assigns error to the trial court's failure to provide "a viable method for [him] to purge contempt, and comply with the non-modifiable maintenance order." Br. of Appellant at 1. He correctly states the rule that "'[a]n order of remedial civil contempt **must contain a purge** clause under which a contemnor has the ability to avoid a finding of contempt and/or incarceration for non-compliance. In re Detention of Rebecca K., 101 Wn. App. 309, 314, 2 P.3d 501 (2000).'" Id. at 15.

The contempt order contains an express purge clause that states "[t]he contemnor may purge the contempt by resuming payments as required by court order, and by arranging for payment of the maintenance arrearages in a manner agreeable to the respondent." CP at 145. Pease argues that this clause is improper because it does not allow him to "perform an act that is yet within his or her power to perform." Br. of Appellant at 15. He cites RCW 7.21.030(2), and reiterates that he is unable to make the maintenance payments. The identified language of RCW 7.21.030(3) sets forth the definition of a "remedial sanction," distinguishing it from a "punitive sanction." As discussed in Britannia, this distinction applies to ensure that incarceration for civil contempt serves a coercive, not a penal purpose. 127 Wn. App. at 933; see also Hipple v.

McFadden, 161 Wn. App. 550, 562, 255 P.3d 730 (2011) (court declined to dismiss malpractice action based on contempt). Because incarceration is not included in the purge clause, the trial court is not required to find a current ability to perform the acts previously ordered.

Randecker-Pease asks for attorney fees on appeal for violation of RAP 18.9(a). She contends that he advances frivolous legal arguments and that he acted with intransigence when he failed to provide a complete record for appeal.

RAP 18.1(a) entitles a party to attorney fees if a statute authorizes the award. Under RAP 18.9(a), an appellate court may order a party to pay sanctions if he or she uses these rules for the purpose of delay, files a frivolous appeal, or fails to comply with the rules of appellate procedure. An appeal is frivolous if there are no debatable issues upon which reasonable minds might differ and it is so totally devoid of merit that there is not reasonable possibility of reversal. In re Marriage of Schnurman, 178 Wn. App. 634, 644, 316 P.3d 514 (2013) review denied, 180 Wn.2d 1010, 325 P.3d 914 (2014) (citing Tiffany Family Trust v. City of Kent, 155 Wn.2d 225, 241, 119 P.3d 325 (2005)). All doubts as to whether the appeal is frivolous should be resolved in favor of the appellant. Id. An appeal that is affirmed simply because the arguments are rejected is not frivolous. Id.

While we have rejected all of Pease's arguments, the record contains conflicting factual findings regarding his ability to pay the required maintenance. Raising at least one debatable issue precludes finding that the appeal as a whole is frivolous. Advocates for Responsible Dev. v. West. Wash. Growth Mgmt. Hearings Bd., 170 Wn.2d 577, 580-1, 245 P.3d 764 (2010). Resolving all doubts

in Pease's favor, we decline to find that his appeal was so totally devoid of merit as to be frivolous.

Second, Randecker-Pease requests that we award fees on the basis of intransigence, because Pease failed to provide a complete record for appeal. Intransigence includes obstruction and foot dragging, filing repeated unnecessary motions, or making a proceeding unduly difficult and costly. In re Marriage of Bobbitt, 135 Wn. App. 8, 30, 144 P.3d 306 (2006). The appellate record shows that as a result of Pease's failure, Randecker-Pease was required to file a supplemental designation of clerk's papers on March 21, 2014. While this may have been a frustration and inconvenience to Randecker-Pease, it does not rise to the level of intransigence. We conclude that Randecker-Pease is not entitled to attorney fees on either asserted ground.

Affirm.

WE CONCUR: